Steven A. BROWN *v.* Leonard S. FINNEY Jr.

95-1329                                          932 S.W.2d 769

Supreme Court of Arkansas
Opinion delivered November 25, 1996

*Blair & Stroud*, by: *H. David Blair* and *Robert D. Stroud*, for appellant.

*Walmsley Law Firm*, by: *Tim Weaver*, for appellee.

DONALD L. CORBIN, Justice. Appellant Steven A. Brown appeals the judgment of the Sharp County Circuit Court granting summary judgment to Appellee Leonard S. Finney Jr. on Appellant's complaint that Appellee was negligent in his operation of a vehicle that resulted in an accident and caused injuries to Appellant. The trial court granted summary judgment on the basis that Appellant's exclusive remedy was through a workers' compensation claim against his employer pursuant to Ark. Code Ann. § 11-9-105 (Repl. 1996). As this appeal involves statutory interpretation, our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(a)(17). Appellant's sole point on appeal is that the trial court erred in granting summary judgment because section 11-9-105 does not provide the exclusive remedy of a worker injured by the active negligence of a non-supervisory coemployee.

According to the information contained in the abstract, Appellant and Appellee were part-time employees of ConAgra, working around ten hours per week catching chickens. Neither Appellant nor Appellee had any supervisory duties on the job. ConAgra provided its part-time employees with transportation in the company van to the work site, or farm, where the chickens were located. For some time before the accident, ConAgra had delegated to Appellee the job of driving the part-time employees to the work sites in the company van. The part-time employees were

not actually required to ride in the company van, but they were certainly encouraged to do so by their supervisors. According to Tim Hicks, the ConAgra supervisor of both Appellant and Appellee, the employees normally parked their vehicles at a location in Cave City, Arkansas, and then rode to the work site together in the company van, normally driven by Appellee. In fact, Tim Hicks stated that other than the night of the accident, he was aware of only one other time when any of the employees drove their personal vehicles to a work site.

On August 18, 1993, Appellee picked up the company van at ConAgra in Batesville, Arkansas, as was his normal procedure, and drove to Cave City, Arkansas, to pick up the employees. For reasons unclear, two of the employees elected to drive their personal vehicles to the work site that night. Apart from Appellee, the driver of the van, and Appellant, there were four other young men riding in the van that night. The employees drove from Cave City to Dwight Smith's farm and proceeded to catch chickens on that farm. When the job was finished at Smith's farm, the employees left for the next work site. Along the way, an accident occurred when the company van, driven by Appellee, went off the roadway on Highway 58 and overturned. As a result of the crash, several of the young men in the van, including Appellant, were injured, some seriously. Through ConAgra's investigation of the accident, there was some indication by the employees who were riding in the van, along with the two employees in their personal vehicles, that the van was travelling at a high rate of speed and that there may have been some racing going on between the vehicles.

As a result of the injuries he sustained in the accident, including a fractured hip, Appellant was awarded workers' compensation indemnity benefits as well as medical benefits. Appellant brought this action against Appellee in circuit court pursuant to a tort claim that Appellee was negligent in his operation of the van on the night of the accident. Specifically, Appellant's complaint alleged that Appellee was operating the van at an extremely high rate of speed, and that when he tried to pass another vehicle, he lost control of the vehicle, which became airborne, crashed, and overturned. Appellee answered the complaint by denying all material allegations and asserting that the circuit court lacked jurisdiction to hear the claim, as section 11-9-105 provides an exclusive remedy for work-related injuries. The trial court agreed that Appellant's exclusive remedy

under the circumstances was through a workers' compensation claim and granted Appellee's motion for summary judgment. Appellant now appeals the order of summary judgment, asserting that the Workers' Compensation Act does not prohibit an employee from maintaining an action in tort against a coemployee for injuries suffered as a result of the coemployee's negligence. We affirm the judgment of the trial court.

Section 11-9-105(a) provides in part:

> The rights and remedies granted to an employee subject to the provisions of this chapter, on account of injury or death, *shall be exclusive of all other rights and remedies of the employee,* his legal representative, dependents, next of kin, or anyone otherwise entitled to recover damages from the employer, or any principal, officer, director, stockholder, or partner acting in his capacity as an employer, or prime contractor of the employer, on account of the injury or death, and the negligent acts of a coemployee shall not be imputed to the employer. [Emphasis added.]

As this court has previously observed, the reason for the exclusivity provision in that section mirrors the general purpose behind our Workers' Compensation Act, which was to change the common law by shifting the burden of all work-related injuries from individual employers and employees to the consuming public with the concept of fault being virtually immaterial. *See Simmons First Nat'l Bank* v. *Thompson,* 285 Ark. 275, 686 S.W.2d 415 (1985). With the passage of such statutes, employers gave up the common-law defenses of contributory negligence, fellow servant, and assumption of the risk and, likewise, employees gave up the chance of recovering unlimited damages in tort actions in return for certain recovery in all work-related cases. *Id.* In other words, the exclusive benefits provision of our workers' compensation law favors both the employer and the employee, and thus we take a narrow view of any attempt to seek damages beyond that favored, exclusive remedy.

Appellant argues that this action is not within the exclusive confines of the Workers' Compensation Act because he is not seeking a damage award from the employer, ConAgra; rather, he is seeking damages from a non-supervisory coemployee for negligence. Appellant asserts that a non-supervisory coemployee is a "third party" within the meaning of Ark. Code Ann. § 11-9-410

(Repl. 1996), and that he should not be prohibited from bringing suit in tort against such a coemployee. Section 11-9-410(a)(1)(A) provides:

> The making of a claim for compensation against any employer or carrier for the injury or death of an employee shall not affect the right of the employee, or his dependents, to make a claim or maintain an action in court against any third party for the injury, but the employer or his carrier shall be entitled to reasonable notice and opportunity to join in the action.

Appellant also distinguishes a non-supervisory coemployee from a fellow coemployee in an attempt to reconcile our prior case law with his theory for recovery. To that extent, Appellant relies heavily on our decision in *King v. Cardin*, 229 Ark. 929, 319 S.W.2d 214 (1959). *King* involved an action for the wrongful death of Dyer, who was struck and killed by a dump truck being driven by King, who was Dyer's fellow employee. Dyer's estate sued King as a third-party tortfeasor, alleging that King was negligent in his operation of the dump truck, and that his negligence caused the death of Dyer. There was testimony that Dyer was struck twice by the dump truck driven by King, and that after Dyer was hit the first time, the truck rocked as if King had applied the brakes, but then the truck continued to back and struck Dyer again, causing the fatal injuries. It was shown at trial that at the time of the accident, King had been backing up the dump truck to the Barber Green asphalt machine while the machine was off, and that it was understood by all the crew members that the dump trucks were not to be backed up to the asphalt machine while its motor was shut off. As to King's argument that such an action in tort was prohibited by the Workers' Compensation Act, this court held:

> We are not impressed by the argument that the Workmen's Compensation Act prevents an employee, or his personal representative, from maintaining an action for the negligence of a fellow employee. Our statute merely provides that the remedies under the act are exclusive of other remedies against the employer. Ark. Stats., § 81-1304. The making of a claim for compensation does not affect the right of the employee or his dependents to maintain an action against a third person. § 81-1340. Under a statute like ours a negligent coemployee is regarded as a third person.

*Id.* at 933, 319 S.W.2d at 218 (citations omitted).

■ Since that decision, we have examined negligent or injurious actions by fellow employees in the context of whether such employees were third parties not immune from suit based upon the duties they were performing or the roles they were undertaking at the time. In *Neal v. Oliver*, 246 Ark. 377, 438 S.W.2d 313 (1969), this court held that the president and owner of a family-owned corporation was not a coemployee, or a third party, for purposes of sustaining an action brought by an employee for negligence. The negligence alleged in that case was that the appellee-owner had failed to provide a safe place to work as required by state law. This court concluded that "[c]ertainly the safety requirements under the labor laws should be enforced in this state and their violation should not go unpunished, but if [appellee-owner] was merely a third party fellow-employee, he had no duty to furnish a place for appellant to work — safe or otherwise." *Id.* at 388, 438 S.W.2d at 319. The duty to provide a safe place to work is that of the employer and it cannot be delegated to an employee. *Id*; *see also Allen v. Kizer*, 294 Ark. 1, 740 S.W.2d 137 (1987). *Neal* established the precedent for our later holdings providing immunity to supervisory employees and coemployees who were engaged in the performance of the duties of the employer.

In *Simmons First Nat'l Bank*, 285 Ark. 275, 686 S.W.2d 415, this court held that since an employer is immune from a negligent failure to provide employees with a safe place to work, the same immunity protects supervisory employees when their general duties involve the overseeing and discharging of that same responsibility. We afforded supervisory employees with the same cloak of immunity from suit enjoyed by employers because supervisory employees fulfill those duties that are exclusively the responsibility of the employer. Hence, our determination of immunity has been based upon the particular role undertaken by the employee at the time of the injury.

■ In *Allen*, 294 Ark. 1, 740 S.W.2d 137, this court concluded that supervisory *as well as non-supervisory* employees are immune from suit for negligence in failing to provide a safe place to work. This court reasoned that because the non-supervisory employee was a maintenance employee of the mill, whose duties included checking and repairing electrical equipment, he was immune from suit. We held that "[e]ven *assuming that he was negligent*

in the maintenance of the bare wires that caused the death by electrocution of Allen, he is immune from suit because failing to repair or check for bare wires involves failure to provide a safe place to work." *Id.* at 6, 740 S.W.2d at 140 (emphasis added).

In *Barnes* v. *Wilkiewicz*, 301 Ark. 175, 783 S.W.2d 36 (1990), we expanded the definition of the work place, determining that such a place was not static in the sense of being limited to the employer's physical premises or actual place of business. In that case, Barnes brought suit for negligence against Wallace, his supervisor, for injuries sustained when they were working on a company truck which had stalled alongside the road. Barnes alleged that Wallace negligently parked his truck partly in the roadway and that his negligence was a cause of Barnes's injuries, which occurred when a motorist struck the parked vehicle, which in turn struck Barnes. This court held that the supervisor was immune from suit because Barnes's claim amounted to one of failure to provide a safe work place. We determined that Barnes was injured during, and within, the course and scope of his employment; that the accident scene was the work place because their job required them to attend to the stalled company truck; and that Wallace was acting in his supervisory capacity at the time of the accident. Barnes cited our decision in *King*, 229 Ark. 929, 319 S.W.2d 214, in support of his contention that the duty Wallace owed to him was a personal duty of due care in the use of the public streets, unrelated to any duty between fellow employees. This court disagreed that *King* stood for such a proposition, holding that the decision merely recognized that an employee may be a "third party" under section 11-9-410 and that, as such, the Workers' Compensation Act does not bar claims between coemployees.

Subsequent to our decision in *Barnes*, 301 Ark. 175, 783 S.W.2d 36, the court of appeals addressed the issue of injury to one employee by the act of a fellow employee occurring in a non-static work place. In *Rea* v. *Fletcher*, 39 Ark. App. 9, 832 S.W.2d 513 (1992), Rea filed a negligence suit against Fletcher, his fellow employee, alleging that Fletcher's negligent operation of a vehicle in which Rea was riding caused injury to Rea's spine. As in the present case, the parties' employer provided transportation from a designated parking lot to the work site and back during lunch and after work. On the day of the accident, their supervisor told Fletcher to bring his truck to the work site for the purpose of

transporting the employees back and forth for lunch, as both company trucks were unavailable. Fletcher agreed to use his truck to transport the employees. It was during the transport that Rea fell off the back of the truck. The trial court granted Fletcher's motion for summary judgment on the basis that an employer is required to provide its employees with a safe place to work. Relying on our decision in *Allen*, 294 Ark. 1, 740 S.W.2d 137, the court of appeals affirmed, holding:

> Even assuming appellee was somehow negligent in driving his vehicle, he is immune from suit because under the facts of this case providing transportation from the employer-designated parking area to the job site involves the duty to provide a safe place to work.

*Rea*, 39 Ark. App. at 13, 832 S.W.2d at 515.

The decision reached by the court of appeals in *Rea*, 39 Ark. App. 9, 832 S.W.2d 513, does not conflict with our holding in *King*, 229 Ark. 929, 319 S.W.2d 214, as the negligent coemployee in *King* was not in any way, shape, or form fulfilling the employer's responsibility to provide a safe work place; rather, he was merely attempting to carry out his separate, individual duty as an employee to drive a dump truck used in asphalt operations. In that particular situation, King was not responsible for the safety of his coemployee, Dyer, and as such, under our workers' compensation statutes, King was a third party. In *Rea*, as in this case, the coemployee was performing the employer's duty to provide a safe work place for the employees.

■ We believe the conclusion reached by the court of appeals is sound and is dispositive of the issue at hand as the factual scenarios in both cases are very similar. As in the *Rea* case, Appellant and Appellee are fellow employees, neither having supervisory powers or duties over the other. ConAgra had elected to provide its part-time employees with transportation in a company van both to and from particular farm work sites, and in doing so had an obligation to provide safe transportation. Appellee had been assigned the task of driving the employees to the work sites by his supervisors, and he was in the process of transporting the employees between jobs when the accident occurred. It is solely the duty of the employer to provide its employees with a safe place to work, and such a duty cannot be delegated away to its employees, supervisory or

otherwise. Furthermore, that duty extends to transportation of the employees between work sites. In transporting the employees, Appellee was acting as an arm of the employer, fulfilling its duty to provide a safe work place, as the work place is not a static entity, especially when the job requires transporting workers from farm to farm.

■ We conclude that Appellee was performing the duties of his employer that night, and as such, he is also immune from suit in tort for the injuries sustained by Appellant. We note that while we have upheld the denial of immunity for employers who commit intentional or willful torts on employees, no such allegation is made here. *See, e.g., Sontag* v. *Orbit Valve Co., Inc.*, 283 Ark. 191, 672 S.W.2d 50 (1984). Although, arguably, Appellee's actions on the night in question may have been less than prudent, the facts as alleged in the complaint do not present a case of intentional, deliberate intent to injure, as Appellant alleges only that Appellee's operation of the van was negligent. We thus affirm the judgment of the trial court.

DUDLEY, GLAZE, and ROAF, JJ., dissent.

ROBERT H. DUDLEY, Justice. In the summer of 1993, Leonard S. Finney, Jr., age twenty, and Steven Brown, age sixteen, were part-time employees of ConAgra. They caught chickens in chicken houses at various farms and loaded them into trucks. Neither had any supervisory authority whatsoever. Their supervisor, Tim Hicks, was the supervisor on the job at Dwight Smith's chicken house near Sidney on the night of August 18, 1993. Finney and Brown, along with other co-employees, caught the chickens inside Smith's chicken house and were instructed by Hicks to go to Cave City next and wait for a ConAgra van that would take them to Smithville where the chickens would be unloaded. Finney, Brown, and three other part-time employees got into another van owned by ConAgra. Finney started driving the van to Cave City. He drove exceedingly fast, perhaps ninety miles per hour, tried to pass a car going up a hill, hit a mailbox, lost control of the van, skidded across the highway, flew off the roadway, and landed in a ditch. Brown, among others, was seriously injured. Brown filed this tort suit against Finney, who responded that he was immune to suit by reason of the Workers' Compensation Act. The trial court ruled that the Workers' Compensation Act provided the exclusive remedy and granted summary judgment in defendant Finney's favor. The

majority opinion affirms.

The issue is whether the Workers' Compensation Act gives immunity from suit to a nonsupervisory employee. Article 5, section 32, of the Arkansas Constitution, as amended by Amendment 26, in pertinent part, is as follows:

> The General Assembly shall have power to enact laws prescribing the amount to be paid by *employers* for injuries to or death of employees, and to whom said payment shall be made. . . . *Provided, that otherwise no laws shall be enacted limiting the amount to be recovered for injuries resulting in death or for injuries to person or property* . . . .

*Id.* (emphasis added). The Initiated Measure that enacted the Workers' Compensation Act provides that "the rights and remedies herein granted to an employee subject to the provisions of this act, on account of injury or death, shall be exclusive of all other rights and remedies of such employee to recover damages from such *employer.*" Initiated Act No. 4, § 4, Acts of 1949 (emphasis added). The *employer's* immunity arising out of the Workers' Compensation Act is expressed in Ark. Code Ann. § 11-9-105(a) (Repl. 1996), as follows:

> The rights and remedies granted to an employee . . . shall be exclusive of all other rights and remedies of the employee . . . to recover damage from the *employer, or any principal, officer, director, stockholder, or partner acting in his capacity as an employer, or prime contractor of the employer* . . . .

*Id.* (emphasis added). The clear language of the statute limits immunity to the "*employer,* or any principal, officer, director, stockholder or partner." This language is given emphasis by Ark. Code Ann. § 11-9-410(a)(1)(A) (Repl. 1996), which provides in pertinent part: "The making of a claim for compensation against any employer *shall not affect the right of the employee ... to make a claim or maintain an action in court against any third party.*"

The question then becomes whether a co-employee with no supervisory authority whatsoever is an "employer" or a "third party." We answered that question in *King v. Cardin,* 229 Ark. 929, 319 S.W.2d 214 (1959), as follows:

> Our statute merely provides that the remedies under the act are exclusive of other remedies against the *employer.* Ark.

Stats., § 81-1304 [now Ark. Code Ann. § 11-9-105, as amended by Act 796 of 1993]. The making of a claim for compensation does not affect the right of the employee or his dependents to maintain an action against a third person. § 81-1340. [now Ark. Code Ann. § 11-9-410, as amended by Act 796 of 1993]. *Under a statute like ours a negligent coemployee is regarded as a third person. Botthof* v. *Fenske,* 280 Ill. App. 362; *Kimbro* v. *Holladay,* La. App., 154 So. 369; *Churchill* v. *Stephens,* 91 N.J.L. 195, 102 Atl. 657.

*Id.* at 933, 319 S.W.2d at 218 (emphasis added).

Ten years after *King* v. *Cardin* we extended the employer's immunity to the president and general manager of a closely held family corporation. In that case, *Neal* v. *Oliver,* 246 Ark. 377, 438 S.W.2d 313 (1969), the plaintiff, who had collected workers' compensation, sued the president and general manager of the closely held corporation for failing to provide a safe work place as required by state law. In our reasoning, we noted that an employer-employee relationship existed between the president and the employee.

In 1960, when we decided *King* v. *Cardin,* the statute that is now codified as Ark. Code Ann. § 11-9-105, provided: "The rights and remedies herein granted to an employee ... shall be exclusive of all other rights and remedies of such employee ... to recover damage from such employer ... ." Ark. Stat. Ann. § 81-1304 (Repl. 1960). This statute was amended by Act 253 of 1979 to incorporate our *Neal* v. *Oliver* holding as follows:

The rights and remedies herein granted to an employee ... shall be exclusive of all other rights and remedies of the employee ... to recover damage from such employer, *or any principal, officer, director, stockholder, or partner ...* .

Ark. Stat. Ann. § 81-1304 (Repl. 1980) (emphasized language added by 1979 amendment). Thus, our cases and the statutes were in complete agreement.

In 1985, in *Simmons First Nat'l Bank* v. *Thompson,* 285 Ark. 275, 686 S.W.2d 415 (1985), we extended the employer's immunity to supervisory employees. In doing so, we wrote:

[S]ince an employer is immune under the statute from a negligent failure to provide employees with a safe place to work, the same immunity protects supervisory employees

> when their general duties involve the overseeing and discharging of that same responsibility.

*Id.* at 278, 686 S.W.2d at 417.

The next year we followed our precedent, quoting *Simmons First Nat'l Bank* v. *Thompson,* and again held that the employer's immunity extended to supervisory employees. *Lewis* v. *Industrial Heating & Plumbing,* 290 Ark. 291, 718 S.W.2d 941 (1986). The same rationale was applied in granting a writ of prohibition in *Fore* v. *Circuit Court,* 292 Ark. 13, 727 S.W.2d 840 (1987).

In *Allen* v. *Kizer,* 294 Ark. 1, 740 S.W.2d 137 (1987), we extended the immunity provided by the Act even further. We held that a nonsupervisory co-employee who was responsible for a safe work place would be treated as an employer under the applicable statutes. We wrote: "[W]e conclude that supervisory as well as nonsupervisory employees are immune from suit for negligence in failing to provide a safe work place." *Id.* at 6, 740 S.W.2d at 140. Then, in *Rea* v. *Fletcher,* 39 Ark. App. 9, 832 S.W.2d 513 (1992), the court of appeals followed *Allen* v. *Kizer* and extended the definition of "safe work place" to vehicles driven by nonsupervisory co-employees.

In summary, we interpreted the two applicable statutes in *King* v. *Cardin* to mean that "a negligent co-employee is regarded as a third party" and therefore is subject to tort suit by a co-employee. Under that interpretation of the statutes the appellant in this case would be able to sue his co-employee for his negligence in driving the employer's van exceedingly fast, perhaps ninety miles per hour, and attempting to pass while going up a hill. However, the majority opinion does not follow *King* v. *Cardin,* and it extends the exception created in *Allen* v. *Kizer* for a negligent co-employee when he or she has a duty to provide a safe work place. The result is that the exception is being allowed to consume the general rule, and that is wrong. The complaint in this case does not allege that the van supplied by the employer was defective in any way; there is nothing mentioned about a safe work place. Rather, the allegation is that Finney, the co-employee, negligently operated the van. Under the Workers' Compensation Act the remedy given to the employee is exclusive against the employer, but it is not exclusive of remedies against co-employees. The immunity arising out of the Workers' Compensation Act is the employer's immunity, not the employee's immunity. The workers' compensation provision in the Arkansas

Constitution provides that "otherwise no laws shall be enacted limiting the amount to be recovered for injuries resulting in death or for injuries to person or property." Ark. Const. art. 5, § 32 (as amended by Amendment 26).

The General Assembly has incorporated *King* v. *Cardin* and *Neal* v. *Oliver* into Ark. Code Ann. § 11-9-410 so that it now defines the word "employer" to include officers, directors, stockholders, partners, and prime contractors, but the General Assembly has never attempted to extend immunity to co-employees. The statute lists those who are immune, and it is a fundamental principle of statutory construction that the express designation of one thing may properly be construed to mean the exclusion of another. *Gazaway* v. *Greene County Equalization Bd.*, 314 Ark. 569, 864 S.W.2d 233 (1993). Further, section 14 of Act 796 of 1993 still provides, in material part, "The making of a claim for compensation ... shall not affect the right of the employee ... to make a claim or maintain an action in court against any third party." In addition, it is significant that the General Assembly added subparagraph (4) to section 14 of Act 796, which provides, "The purpose and intent of the reenactment of this statute is to annul any and all case law inconsistent herewith." *See* notes to Ark. Code Ann. § 11-9-410 (Repl. 1996). In summary, Steven Brown was allegedly injured because Leonard Finney allegedly operated ConAgra's van in a negligent manner. It is undisputed that Leonard Finney was a co-employee and had no supervisory authority whatsoever. Steven Brown has recovered pursuant to the Workers' Compensation Act from ConAgra, but Ark. Code Ann. § 11-9-410 provides that "[t]he making of a claim for compensation against any employer ... shall not affect the right of the employee ... to make a claim or maintain an action in court against any third party." Leonard Finney is a third party under our holding in *King* v. *Cardin*. He is not an employer and is not entitled to immunity as an employer. There is no allegation that the employer negligently furnished the van, or that the van was defective. The allegation is that the co-employee negligently operated the van. I would reverse the ruling of the circuit court and allow Brown to pursue an action against his co-employee, Finney.

GLAZE and ROAF, JJ., join in this dissent.